**SONOSCAN, INC., Plaintiff–Appellant,**

v.

**SONOTEK, INC., Defendant–Appellee.**

No. 91–1017.

United States Court of Appeals,
Federal Circuit.

June 12, 1991.

Thomas E. Dorn, Kinzer, Plyer, Dorn, McEachran & Jambor, Chicago, Ill., argued for plaintiff-appellant. With him on the brief was Peter G. Mack, Foley & Lardner, Schwartz, Jeffrey, Schwab, Mack, Blumenthal & Evans, Alexandria, Va., of counsel.

Robert M. Mason, Jones, Day, Reavis & Pogue, Dallas, Tex., argued for defendant-appellee. With him on the brief was Hal D. Cooper, Jones, Day, Reavis & Pogue, Cleveland, Ohio.

Before LOURIE, CLEVENGER and RADER, Circuit Judges.

LOURIE, Circuit Judge.

This is an appeal from the August 30, 1990, judgment of the United States District Court for the Eastern District of Virginia in which the district court held that appellant's U.S. Patent 4,866,986 is invalid under 35 U.S.C. § 102(b) (1988) on the ground that the patented invention had been placed on sale more than one year prior to the filing date of the application for patent. *Sonoscan, Inc. v. Sonotek, Inc.*, 17 USPQ2d 1247 (E.D.Va.1990). We affirm.

## BACKGROUND

A scanning acoustic microscope is a quality-control instrument used for non-destructive testing of various items such as capacitors, integrated circuits, and other electronic devices. Ultrasonic pulse "echoes" are reflected from a test object to produce an image which helps to indicate the quality of the object. Since 1985, Sonoscan, Inc. has manufactured and sold such microscopes.

On November 18, 1986, Sonoscan made a price quotation on a "C–Mode Scanning Acoustic Microscope," model 3100 (System 3100), to IBM Corporation for $123,500. Sonoscan similarly quoted a price on another System 3100 to IBM for $128,500 on September 10, 1987, and also quoted on a System 3100 to Amdahl Corporation for $128,500 on September 18, 1987.

On September 15, 1988, Sonoscan filed an application for patent on a scanning acoustic microscope and a method of using it. The Patent and Trademark Office later issued this application as U.S. Patent 4,866,986. The sole independent apparatus claim in the patent reads:

A display system for a scanning acoustic microscope of the kind comprising transducer means for generating a series of acoustic pulses of ultrasonic frequency and predetermined magnitude, acoustic scanning means for directing the acoustic pulses to impinge upon and insonify an object with predetermined timing in accordance with a preselected scanning pattern, and receiver means for receiving ultrasonic pulse echoes reflected from the object and developing an initial electrical signal of varying amplitude and polarity representative of the magnitude and phase, respectively, of the ultrasonic pulse echoes, the display system comprising:

amplifier means, connected to the receiver means, for generating an amplitude content signal representative of amplitude of the initial electrical signal, independent of polarity;

comparator means, connected to the receiver means, for generating a polarity content signal representative of polarity of the initial electrical signal, independent of amplitude; and

display means, actuated by the content signals, for *displaying a unified image of the object* in which acoustic impedance transitions for at least one depth level of the object from which echoes of different polarities occur are clearly distinguished from each other in the image despite similarities, however close, in the magnitudes of those echoes.

(Emphasis added).

In 1990, Sonoscan filed suit against Sonotek, Inc. for infringement of the patent. Sonotek asserted as an affirmative defense that the patent was invalid under 35 U.S.C. § 102(b) on the basis that the patented invention was on sale more than one year prior to Sonoscan's filing of its patent application.

The district court, without objection from the parties, bifurcated the lawsuit to first hold a trial on the "on sale" defense. After this trial, the court held the patent invalid under § 102(b) and entered final judgment in favor of Sonotek. Sonoscan appealed.

## DISCUSSION

■ The issue here is whether the district court erred in concluding that Sonoscan placed the patented invention on sale more than one year prior to filing its patent application. This is a legal issue which we review *de novo, Envirotech Corp. v. Westech Eng'g Inc.*, 904 F.2d 1571, 1574, 15 USPQ2d 1230, 1232 (Fed.Cir.1990), although it may be based on factual findings which we review under the clearly erroneous standard, *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 622, 225 USPQ 634, 639, *cert. dismissed*, 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (Fed.Cir.1985). The facts concerning an "on sale" defense must be proved by clear and convincing evidence. *Envirotech Corp.*, 904 F.2d at 1574, 15 USPQ2d at 1232.

■ Sonoscan argues that the district court erred in its conclusion that the microscope was on sale, asserting that its quotations to IBM did not offer the patented invention. It also argues that on September 15, 1987, the critical date, the invention was not sufficiently developed to be on sale. We disagree.

Sonoscan filed its application for patent on September 15, 1988; thus, the "on sale" critical date for the application was September 15, 1987. The September 18, 1987, quotation to Amdahl occurred after this date and therefore cannot invalidate the patent.

The September 10, 1987, quotation to IBM is another matter. It stated that the System 3100 was a scanning acoustic microscope in which high resolution ultrasonic images were generated by a pulsed transducer and acoustic lens assembly. The elements of this system included a scanner, pulser/receiver, transducer, signal processing unit, image display, and oscilloscope. The signal processing element featured echoes being gated and digitally processed, with amplitude and polarity information being preserved.

The quotation, however, did not refer to the unified image which was recited in the issued apparatus claim. Moreover, there was conflicting testimony as to what this quotation actually included. This quotation by itself therefore did not provide clear and convincing evidence that Sonoscan offered the patented invention before the critical date. However, that does not end our inquiry.

"That the offered product is in fact the claimed invention may be established by any relevant evidence, such as memoranda, drawings, correspondence, and testimony of witnesses." *RCA Corp. v. Data Gen. Corp.*, 887 F.2d 1056, 1060, 12 USPQ2d 1449, 1452 (Fed.Cir.1989). We conclude that the totality of the evidence in this case justified the district court's conclusion that the invention of the patent was on sale.

The most important feature of the invention is the capability of displaying amplitude and polarity data on an object in the same, or unified, image. The district court heard testimony concerning the state of development of the invention as of the September 15, 1987, date from three witnesses, all from Sonoscan. The court found that by March 10, 1986, the inventor, Frank Cichanski, knew of specific electronic circuitry that was capable of displaying amplitude differences as color variations. It found that a schematic diagram, dated September 9, 1987, included circuitry that was capable of displaying a unified image with both amplitude and polarity. The court also found that this diagram was based upon a working prototype which existed at Sonoscan prior to the date of the schematic and that the prototype contained the unified image display of the claimed invention.

The President of Sonoscan, Dr. Lawrence W. Kessler, gave testimony concerning the state of development of the invention as of the critical date, including details of the working prototype and the functions the device of the September 9th schematic performed. Sonoscan's counsel admitted at a hearing on August 17, 1990, that if IBM had placed an order pursuant to the September 10th quotation, Sonoscan would have delivered a machine that had the capability of displaying polarity and amplitude in a unified image. The court accordingly found that if IBM had placed an order

pursuant to the September 10th quotation, Sonoscan would have shipped a machine which utilized the circuitry in the schematic and which would have been capable of displaying polarity and amplitude in a unified image.

The trial judge was in the best position to determine the credibility of and weight to be given to all of this testimony and we conclude that the court did not clearly err in any of the above factual findings. On the basis of these findings, the court concluded that the patented invention was sufficiently developed so that the September 10th quotation was a genuine offer of the patented invention. The invention had been "sufficiently tested to demonstrate to the satisfaction of the inventor that the invention as ultimately claimed would work for its intended purpose." *See UMC Elec. Co. v. United States*, 816 F.2d 647, 657, 2 USPQ2d 1465, 1472 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988).

The court noted that the model no. (3100) of the offered device was the same as that offered three days after the critical date to Amdahl, which unquestionably comprised all the features of the claimed microscope. Dr. Kessler gave no answer to the question as to what changes were made to the invention between September 10th and September 18th. The court was fully entitled to conclude that that device was the same as the one offered to IBM before the critical date.

Sonoscan argues that the September 18th quotation to Amdahl is irrelevant because it occurred after the critical date. We disagree. If the district court had concluded that, based on the Amdahl quotation, the patented device was offered for sale more than one year before Sonoscan's filing of its patent application, it would have erred since that quotation was issued after the critical date. However, it did not consider the September 18th quotation to be a bar. What the court did was to inquire as to what was offered in the Amdahl quotation, what development activities occurred between September 10th and 18th, and to infer from the evidence that what

was adequately developed on the 18th was also adequately developed on the 10th. Sonoscan conceded that the Amdahl quotation, which was at the same price as that on September 10th, was for the patented invention. The district court found that no serious change in the invention took place during this interim period. We also note that the September 10th quotation to IBM was still valid on September 18th, and in fact could have been accepted until December 10th. The identical sale price of these quotations further supports the district court finding that no major change occurred in the eight-day interim. We think that the court was reasonably entitled to conclude that the two quotations were for the same device, which was sufficiently well-developed and capable of being supplied to cause the September 10th quotation to be a statutory bar.

Appellant also argues that the quotes to IBM were made only for IBM's internal budgeting purposes and not because Sonoscan had a completed device to sell. Since there was no documentary evidence supporting that assertion and no testimonial support from IBM, the court was justified in rejecting that argument.

Appellant asserts that it has not violated the policies underlying the on sale bar and that its patent should not be held invalid under section 102(b). We disagree. The statute provides that when a patented invention is placed on sale more than one year prior to the date of a patent application on that invention, any subsequently issued patent is invalid. 35 U.S.C. § 102(b). The court found facts which we do not judge to be clearly erroneous, and those facts support the legal conclusion that the device was on sale. This conclusion does not run counter to any policy behind the "on sale" bar.

■ Sonoscan finally argues that the district court erred as to certain actions. It argues that the deposition of Dr. Kessler which was not submitted into evidence, was improperly used by the district court. We find no fault with the court, which only focused on those portions of the deposition of Dr. Kessler which were used during his

cross-examination and were also read into the record during the trial. On the day of the trial, the court asked counsel for appellant if Dr. Kessler wished to recant his deposition testimony to the effect that Sonoscan was capable of supplying a device meeting the terms of the claims on or before the critical date; he declined to do so. The court was thus justified in its actions.

Sonoscan has not shown that any material factual findings by the district court were clearly erroneous or that the court committed reversible legal error.

## CONCLUSION

The judgment of the district court is AFFIRMED.