**BIODEX CORPORATION,
Plaintiff–Appellant,**

v.

**LOREDAN BIOMEDICAL, INC.,
Defendant–Appellee.**

**No. 91–1062.**

United States Court of Appeals,
Federal Circuit.

Oct. 3, 1991.

Peter T. Cobrin, Cobrin, Feingertz & Gittes, New York City, argued, for plaintiff-appellant. With him on the brief was, Marvin S. Gittes. Also on the brief was, Malcolm B. Wittenberg, Crosby, Heafey, Roach & May, Oakland, Cal., of counsel.

Matthew D. Powers, Orrick, Herrington & Sutcliffe, San Francisco, Cal., argued, for defendant-appellee. With him on the brief were, William L. Riley, Angela Ziegenhorn and Kathryn Doi, of counsel.

Before RICH, MICHEL, and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Biodex Corporation ("Biodex") appeals the judgment of the U.S. District Court for the Eastern District of California entered on a jury verdict that found U.S. Patent

No. 4,691,694 ("694 patent") invalid and U.S. Patent No. 4,628,910 ("910 patent") not infringed by devices manufactured by defendants, Loredan Biomedical, Inc., and its chief executive, Malcolm Bond (collectively, "Loredan"). *Biodex Corp. v. Loredan Biomedical, Inc.*, Civ-S–87–1132 (E.D.Ca. Oct. 2, 1990). We affirm.

## I

Biodex is the assignee of both patents in suit which claim certain muscle exercise and rehabilitation devices. The 910 patent issued December 16, 1986. After notice of allowance, Biodex had filed a continuation-in-part application on September 15, 1986, which later matured into the 694 patent upon issuance on September 9, 1987. Biodex filed suit asserting that devices manufactured by Loredan infringed various claims of the patents.

At trial before a jury, Loredan contended, *inter alia*, that the 694 patent was invalid under 35 U.S.C. § 102(b) because the subject matter of the claimed invention had been offered for sale in the spring and summer of 1985, more than one year before the filing date. Biodex argued that the invention claimed in the 694 patent had not been satisfactorily tested so as to be safe for human use until after the critical date of September 15, 1985, and, therefore, could not have been on sale. On the 910 patent, Loredan argued that two terms in the asserted claims, written in means-plus-function language, did not read on the alleged devices because the corresponding structures found in the Loredan devices were not equivalent to the structures disclosed in the specification. Loredan contended that the inventor had expressly conceded this fact before the U.S. Patent and Trademark Office ("PTO"). Biodex responded, first, that the jury need only consider the plain language of the terms in question which read on the Loredan devices; second, that Loredan misconstrued the inventor's concession during prosecution; and, third, that the structures in the accused devices were equivalents.

■ In its appellate briefs, Biodex recognizes that resolution of these issues required the jury to decide questions of fact. For instance, in its opening brief, Biodex contests that "the jury verdict of non-infringement of the '910 patent was supported by substantial evidence." In its reply brief, Biodex argues that the special verdict of invalidity of the 694 patent was not "supported by the evidence." We read both references to evidentiary support to concede that the verdicts were based upon factual determinations made by the jury. In any event, while we agree with Biodex's initial contention that an ultimate conclusion as to an on-sale bar is a question of law, *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 837, 221 USPQ 561, 565–66 (Fed.Cir.1984), the inquiry does not end there, as noted by Loredan. The many factors that enter into the "totality of the circumstances" underlying the legal conclusion of an on-sale bar involve exploration and resolution of questions of fact. *Manville Sales Corp. v. Paramount Sys.*, ⸴917 F.2d 544, 549, 16 USPQ2d 1587, 1591 (Fed.Cir.1990); *U.S. Envtl. Prods., Inc. v. Westall*, 911 F.2d 713, 716, 15 USPQ2d 1898, 1901 (Fed.Cir. 1990); *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 622–23, 225 USPQ 634, 639–40 (Fed.Cir.), *cert. dismissed*, 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985); *Western Marine Elec., Inc. v. Furuno Elec. Co.*, 764 F.2d 840, 845, 226 USPQ 334, 337–38 (Fed.Cir.1985). Both parties agree that an operable physical embodiment of the invention was not in existence before the critical date. Therefore, the only question for the jury to resolve on the contested validity issue, which the parties treated as the determinative factor underlying validity, was whether the subject matter of the 694 patent was sufficiently tested by the spring and summer of 1985 so that the invention could be on sale. Evidence was provided that some testing had been undertaken prior to the critical date and the only disputed issue, then, was the adequacy of that testing, which is a question of fact. *Cf. UMC Elec. Co. v. United States*, 816 F.2d 647, 657, 2 USPQ2d 1465, 1472 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988). Similarly, "whether an

accused device is a section 112 equivalent of the described embodiment is a question of fact." *Durango Assoc., Inc. v. Reflange, Inc.*, 843 F.2d 1349, 1357, 6 USPQ2d 1290, 1295 (Fed.Cir.1988) (note omitted).

As permitted by Fed.R.Civ.P. 51, both parties requested and submitted various jury instructions. The district court, however, drafted its own instructions. Preserving its plain language argument, Biodex objected to the instructions on identifying equivalent structures to a claimed means expressed in functional language and on using the doctrine of prosecution history estoppel in determining the scope of protection under the doctrine of equivalents. Biodex contended that literal claim construction should be no different for a claim drafted under 35 U.S.C. § 112 ¶ 6 because the statute makes no "distinction" whether a claim uses "means-plus-function" language or not. Biodex requested but did not receive an additional instruction on application of the doctrine of prosecution history estoppel, which read, in pertinent part:

> However, you should note that the doctrine of prosecution history estoppel has no applicability whatsoever if the plain language of the claims reads on an accused device for then infringement exists.

At the conclusion of testimony, Biodex orally moved for a directed verdict. Review of a transcript of that motion does not reveal a specific allegation that Loredan's evidence in support of the contested validity or infringement issues was insufficient although judgment was requested on those issues as a matter of law. The district court never ruled upon the motion. The case was submitted to the jury with multiple special verdicts forms. In the verdicts, the jury found that all the asserted claims of the 694 patent were proved invalid and that none of the claims of the 910 patent were infringed by Loredan. The district court entered judgment on the jury verdicts. Biodex made no post-verdict motions either by renewing its motion for a directed verdict, moving for a new trial, or by moving for judgment *non obstante veredicto* ("JNOV").

## II

On appeal, Biodex contends that the failure to give the requested jury instruction was prejudicial error. Furthermore, Biodex contends that neither special verdict, of invalidity of the one patent nor of noninfringement of the other, was supported by substantial evidence. Loredan answers that the suggested jury instruction, while perhaps technically accurate, was misleading in the context of its defense that "means-plus-function" language must be carefully construed. Nor, Loredan contends, were the jury instructions, read in their entirety, incorrect, unclear, or less than comprehensive. On the special verdicts, Loredan argues that, while there was sufficient evidentiary support, Biodex did not preserve the issues for appellate review by filing a post-verdict motion in the district court.

## III

We must first determine the standard of review to be applied to the issues before us and whether we should apply regional circuit law or our own. There is no dispute among the circuits, nor in our own jurisprudence, that a judgment should be altered "because of a mistake in jury instructions only if the error was prejudicial" and that we must "look to the entire jury charge ... to determine whether the instructions fairly stated the legal principles to be applied by the jury." [1] Under

---

1. *Smiddy v. Varney*, 665 F.2d 261, 265 (9th Cir. 1981), *cert. denied*, 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982); *see Palmer v. Hoffman*, 318 U.S. 109, 116, 63 S.Ct. 477, 481, 87 L.Ed. 645 (1943) (prejudicial error standard); *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1517, 220 USPQ 929, 939–40 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). *Accord Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1271 (10th Cir.1988); *Villaneuva v. Leininger*, 707 F.2d 1007, 1009–1010 (8th Cir.1983); *Alloy Int'l Co. v. Hoover–NSK Bearing Co.*, 635 F.2d 1222, 1226 (7th Cir.1980); *Bagherzadeh v. Roeser*, 825 F.2d 1000, 1003 (6th Cir.1987); *Troutman v. Southern Ry. Co.*, 441 F.2d 586, 590 (5th Cir.),

this standard, jury instructions must be both legally correct and sufficiently comprehensive to address factual issues for which there is disputed evidence of record. A party has no vested right in its own carefully couched form of words in an instruction, because "the court is not required to give instructions in the language and form requested." *Oliveras v. U.S. Lines Co.*, 318 F.2d 890, 892 (2d Cir.1963); *see also* 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 51.06, at 51–45 (2d ed. 1991). Therefore, Biodex has a two-fold task. Biodex must both prove the jury instructions read in their entirety were incorrect or incomplete as given and then demonstrate that the suggested instruction could have cured the error.

## IV

 The extent to which we may review the special verdicts is not so readily apparent. Quite clearly, the only available remedy upon finding error in a judgment entered on a jury verdict where there has been no motion for JNOV is limited to a remand for a new trial.[2] Whatever the remedy, however, we must first respond to the contention of Loredan and determine whether there is any limitation on our review for error in these circumstances, *i.e.*, whether and to what degree a jury verdict on a factual issue is reviewable on appeal. When no motion challenging the legal sufficiency of the evidence has been made at any stage in the district court, the law is uniform in all circuits that review is limited to plain error.[3] In this case, Biodex did make an oral motion for directed verdict at the conclusion of the evidence, although this motion was not resubmitted or renewed in any form after the verdict. Our case law does not address whether jury verdicts, in such circumstances, may lack reviewability for sufficiency of the evidence.[4] Furthermore, our case law has not been clear on whether we should or must defer to the law of the regional circuit on

---

cert. denied, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971) (prior to creation of Eleventh Circuit); *Wellington v. Daniels*, 717 F.2d 932, 938 (4th Cir.1983); *Waldorf v. Shuta*, 896 F.2d 723, 730–33 (3rd Cir.1990); *Oliveras v. U.S. Lines Co.*, 318 F.2d 890, 892 (2d Cir.1963); *Connors v. McNulty*, 697 F.2d 18, 21 (1st Cir.1983); *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 846 n. 6 (D.C.Cir.1981), cert. denied, 455 U.S. 994, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982).

2. *Johnson v. New York, N.H. & H.R.R.*, 344 U.S. 48, 54, 73 S.Ct. 125, 128, 97 L.Ed. 77 (1952); *Globe Liquor Co. v. San Roman*, 332 U.S. 571, 574, 68 S.Ct. 246, 247, 92 L.Ed. 177 (1948); *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 218, 67 S.Ct. 752, 755, 91 L.Ed. 849 (1947); *Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 872 F.2d 978, 995, 11 USPQ2d 1479, 1479 (Fed.Cir.1989).

3. *Jurgens v. McKasy*, 927 F.2d 1552, 1557, 18 USPQ2d 1031, 1035 (Fed.Cir.1991); *Snellman v. Ricoh Co.*, 836 F.2d 528, 534, 5 USPQ2d 1341, 1346 (Fed.Cir.1987), cert. denied, 491 U.S. 910, 109 S.Ct. 3199, 105 L.Ed.2d 707 (1989); *Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1063, 3 USPQ2d 1288, 1289 (Fed.Cir.1987); *Weinar v. Rollform Inc.*, 744 F.2d 797, 804 n. 1, 223 USPQ 369, 372 n. 1 (Fed.Cir.1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143 (1985); Fed.R.Civ.P. 50(b); *see* 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 50.05[1], at 50–43 to 50–47, ¶ 50.12, at 50–90 (2d ed. 1991) (collecting cases from regional circuits).

4. Biodex, in response to Loredan's contention, cites *Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 872 F.2d 978, 10 USPQ2d 1338 (Fed.Cir.1989) as authority for its challenge to the sufficiency of the evidence. In *Sun Studs*, this court had initially reversed a jury verdict on the issue of laches, holding that the appellee referred to "no evidence of prejudice whatsoever." 872 F.2d at 993, 10 USPQ2d at 1351. On petition for rehearing, for the first time, the Court was informed that the appellant had failed to move for JNOV on the issue of laches. *Sun Studs*, 872 F.2d at 994, 11 USPQ2d 1479, 1479. The Court modified the relief ordered, citing *Johnson*, 344 U.S. at 54, 73 S.Ct. at 128, for the rule that appellate relief in such circumstances is limited to a new trial. Neither party raised, nor did the court discuss, whether the sufficiency of the evidence was reviewable in that context. It is not entirely clear whether the *Sun Studs* court addressed the evidentiary basis under the sufficiency of the evidence standard, the language used in the post-decision order, 872 F.2d at 995, 11 USPQ2d at 1479, or as a matter of plain error because there was "no evidence ... whatsoever," as stated in the opinion. In any event, insofar as Biodex is concerned, "this language [in the post-decision order] is dictum not only in the sense that the [review for sufficiency] question was not presented for decision, it is dictum in that

this kind of issue.[5] An added difficulty, as noted by both parties, is that the law of the U.S. Court of Appeals for the Ninth Circuit, whence this case originates, on this point is not clearly discernable. In *Kopczynski v. The Jacqueline*, 742 F.2d 555, 560 (9th Cir.1984), *cert. denied*, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985), the Ninth Circuit stated that, in the absence of a motion for JNOV, it would not pass on Kopczynski's contention that a directed verdict on the issue of unseaworthiness of the vessel was mandated by the evidence in favor of appellant. However, when considering punitive damages for the alleged unseaworthiness, the court returned to the issue, stating, "[a]s just discussed, the jury did not find that The Jacqueline was unseaworthy under general maritime law and we see no reason to disturb that conclusion." *Id.* We cannot read *Kopczynski* as necessarily imposing a requirement for a motion for JNOV as a prerequisite to appellate review of the sufficiency of the evidence supporting the jury verdict. The parties do not cite, and we have not identified, a Ninth Circuit case that addresses and decides this issue. Moreover, regional circuit law as to whether appellate review for sufficiency of the evidence is precluded absent a motion for JNOV is neither uniform nor clear, which makes either discerning Ninth Circuit law or stating our own more difficult.[6] Indeed, this Court has previously noted that the law on the reviewability of a jury verdict for sufficiency of the evidence absent a post-verdict motion is unsettled.[7]

## V

We first address whether deference to regional circuit law is appropriate in deciding if a post-verdict motion is a prerequisite to appellate review of the sufficiency of the evidence underlying a jury verdict. In general, our initial inquiry in determining whether deference to regional circuit law is due has been to decide whether the law that must be applied, whether procedural or substantive, is one "... over which this

---

the issue was not presented at all." *Certainteed Corp. v. NLRB,* 714 F.2d 1042, 1059 (11th Cir. 1983).

5. Because this case does not involve a post-verdict motion, we need not resolve an apparent conflict in this circuit as to whose law applies to review of such motions. *Compare Sjolund v. Musland,* 847 F.2d 1573, 1576, 6 USPQ2d 2020, 2023 (Fed.Cir.1988) (applying 9th Circuit law on review of denial of post-verdict motion) *with Perkin–Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.), *cert. denied,* 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984) (applying Federal Circuit law on review of denial of post-verdict motion). We note, however, that the apparent conflict is a distinction without a difference, since the law applied in these circumstances is uniform. *Slocum v. New York Life Ins. Co.,* 228 U.S. 364, 369, 33 S.Ct. 523, 525, 57 L.Ed. 879 (1913); *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1546, 220 USPQ 193, 197 (Fed.Cir.1983); *see Boeing Co. v. Shipman,* 411 F.2d 365, 372 n. 8 (5th Cir.1969) (*en banc*) (collecting cases from regional circuits); *see also* 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 50.07[2] (2d ed. 1991).

6. *Compare Woods v. National Life & Accident Ins. Co.,* 347 F.2d 760, 769 (3d Cir.1965) ("A party's failure to file a motion for judgment n.o.v. in the trial court precludes an examination of the record by that court or this court for the purpose of ascertaining whether that party was entitled to a directed verdict."), *Karjala v. Johns–Manville Prods. Corp.,* 523 F.2d 155, 157

(8th Cir.1975) (Where appellant did not move for JNOV, "[w]e cannot test the sufficiency of the evidence to support the jury's verdict beyond application of the 'plain error' doctrine in order to prevent a miscarriage of justice.") *and Jones v. Reliance Ins. Co.,* 607 F.2d 1, 4 (D.C.Cir.1979) (absent motion for JNOV, appellate review only for "complete absence of evidence") *with United States v. Valdosta–Lowndes Cty. Hosp. Auth.,* 696 F.2d 911, 912–13 (11th Cir.1983) (independent review of denial of directed verdict motion permitted after judgment); *but see Locricchio v. Legal Serv. Corp.,* 833 F.2d 1352, 1356 n. 2 (9th Cir.1987) (no review of denial of directed verdict); *cf. Kopczynski v. The Jacqueline,* 742 F.2d 555, 560 (9th Cir.1984) (question of direct review of denial of directed verdict not passed on), *cert. denied,* 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985); *see also Borger v. Yamaha Int'l Corp.,* 625 F.2d 390, 394–95 (2d Cir. 1980) ("Borger's contends that Yamaha's failure to move within ten days for judgment n. o. v. as required by Fed.R.Civ.P. 50(b) precludes it from seeking appellate review of the sufficiency of the evidence to support the jury's affirmative finding. * * * However, the issue is sufficiently close that we think it should not be passed upon in the first instance by this Court, and we will not do so.").

7. *Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1511, 220 USPQ 929, 934 (Fed.Cir.), *cert. denied,* 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984) (absent motion for JNOV, "review for sufficiency of evidence is extremely limited *or* non-existent" (emphasis added)).

court does not have exclusive appellate jurisdiction." *Cicena Ltd. v. Columbia Telecommunications Group*, 900 F.2d 1546, 1548, 14 USPQ2d 1401, 1403 (Fed.Cir.1990) (unfair competition law). This test has been variously and inconstantly phrased. The court has recently stated the relevant test as whether the issue concerns a "subject which is not unique to patent law," *Kalman v. The Berlyn Corp.*, 914 F.2d 1473, 1480, 16 USPQ2d 1093, 1098 (Fed.Cir. 1990), or which is "not specific to our statutory jurisdiction," *Registration Control Sys. v. Compusystems, Inc.*, 922 F.2d 805, 807, 17 USPQ2d 1212, 1214 (Fed.Cir.1990), in which event we have deferred. Alternatively, we have looked to whether the procedural issue may be "related" to "substantive matters unique to the Federal Circuit" and thus committed to our law. *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953, 15 USPQ2d 1469, 1470 (Fed.Cir.1990). Furthermore, no matter how phrased, this particular test has not always ended our inquiry. We have considered, secondarily, whether "[m]ost cases [involving the issue] will come on appeal to this court," thereby putting us in a "good position to create a uniform body of federal law" on the issue. *Forman v. United States*, 767 F.2d 875, 880 n. 6 (Fed.Cir.1985) (construction of U.S. Post Office lease agreements). *But see Molins PLC v. Quigg*, 837 F.2d 1064, 1066, 5 USPQ2d 1526, 1527 (Fed.Cir.), *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988) (ripeness of PTO action determined under regional circuit law). Finally, we have generally conformed our law to that of the regional circuits, without regard to the relationship of the issue to our exclusive jurisdiction, when there is existing and expressed uniformity among the circuits.[8] Indeed, in such circumstances, a choice of different law might have been problematic.

Our inquiry into this question will benefit from an examination of the origins of our rule of deference. In *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1439, 223 USPQ 1074, 1087 (Fed.Cir.1984), which dealt with a substantive legal issue under copyright, this Court noted that "[i]t would be at best unfair to hold in this case that the district court, at risk of error, should have 'served two masters', or that it should have looked, Janus-like, in two directions in its conduct of that judicial process." On a procedural issue, attorney disqualification, this Court remarked that, in "[d]ealing daily with such procedural questions in all types of cases, a district court cannot and should not be asked to answer them one way when the appeal on the merits will go to the regional circuit in which the district court is located and in a different way when the appeal will come to this circuit." *In re International Medical Prosthetics Research Assoc.*, 739 F.2d 618, 620 (Fed. Cir.1984). In short, the policy of achieving uniformity in district court management of trials has been a significant factor in our occasional deference to regional circuit law. This Court stated the importance of this factor, as a rule, in *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 223 USPQ 465 (Fed.Cir.1984):

> We, therefore, rule, as a matter of policy, that the Federal Circuit shall review procedural matters, that are not unique to patent issues, under the law of the particular regional circuit court where appeals from the district court would normally lie. This policy is within the intent and spirit of not only our enabling statute but also the general desire of the federal judicial system to minimize confusion and conflicts. Since our mandate is to eliminate conflicts and uncertainties in the area of patent law, we must not, in doing so, create unnecessary conflicts and confusion in procedural matters.

*Panduit*, 744 F.2d at 1574–75, 223 USPQ

---

8. *See Fonar Corp. v. Johnson & Johnson*, 821 F.2d 627, 631, 3 USPQ2d 1109, 1112 (Fed.Cir. 1987) (review of grant of JNOV), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 751, 98 L.Ed.2d 764 (1988); *Wahpeton Canvas Co. v. Frontier, Inc.*,

870 F.2d 1546, 1552 n. 8, 10 USPQ2d 1201, 1207 n. 8 (Fed.Cir.1989) (review of denial of JNOV); *Sjolund v. Musland*, 847 F.2d at 1576 (same); *Exxon Corp. v. United States*, 931 F.2d 874, 877 n. 4 (Fed.Cir.1991) (law of the case).

at 471 (notes omitted).[9]

In the very next sentence, with prescience, the Court recognized that the relationship between the particular issue at hand and the exercise of our exclusive statutory jurisdiction could not then be expressed in fixed language, by stating that "[t]he exact parameters of this ruling will not be clear until such procedural matters are presented to this court for resolution." *Id.* The *Panduit* Court itself further phrased the relevant line of demarcation in fluid language, noting that the resolution of the issue of deference in particular cases would depend on whether the procedural matter should "pertain to" or be "related to patent issues, [such that] they have a direct bearing on the outcome." *Id.* at n. 14 (citing *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 839, 221 USPQ 561, 567–68 (Fed. Cir.1984)). Although not at issue in *Panduit,* the Court additionally noted the potential applicability of a comparable rule to the review of Little Tucker Act cases. *Id.* at n. 15 (citing *Heisig v. United States,* 719 F.2d 1153 (Fed.Cir.1983)). Subsequently, again citing the implicated policy of achieving uniformity in the law, this Court held that "[i]t would contravene the intent of Congress to achieve uniformity in the adjudication of Tucker Act claims for us to

apply regional circuit law in appeals from district court Little Tucker Act decisions, since those cases usually involve the same legal issues as do appeals from the Claims Court." *United States v. One (1) 1979 Cadillac Coupe de Ville,* 833 F.2d 994, 998 (Fed.Cir.1987). The Court has thus cautioned that our deference to regional circuit law in the interest of uniformity was not applicable when we would be called upon to resolve either procedural or substantive matters that were essential to the exercise of our exclusive statutory jurisdiction.

In sum, *Panduit* did not engrave a fixed meaning to the terms "unique to," "related to," or "pertain[ing] to," our exclusive statutory subject matter jurisdiction, but instead recognized that each case must be decided by reference to the core policy of not creating unnecessary conflicts and confusion in procedural matters. Moreover, *Panduit* expressly directs us to a review of our subsequent cases, in which deference has been applied, to clarify the parameters of the rule.

In reviewing our subsequent cases, we note that our practice has been to defer to regional circuit law when the precise issue involves an interpretation of the Federal Rules of Civil Procedure or the local rules of the district court.[10] Resolution of such

9. We recognized in *Atasi Corp. v. Seagate Technology,* 847 F.2d 826, 829 n. 2, 6 USPQ2d 1955, 1956 n. 2 (Fed.Cir.1988), that *Panduit's* disposition of the attorney disqualification issue had been "implicitly overruled" by *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 440–41, 105 S.Ct. 2757, 2766, 86 L.Ed.2d 340 (1985).

10. *See Badalamenti v. Dunham's, Inc.,* 896 F.2d 1359, 1362, 13 USPQ2d 1967, 1970 (Fed.Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 142, 112 L.Ed.2d 109 (1990) (Rule 37); *Kalman v. Berlyn Corp.,* 914 F.2d 1473, 1480, 16 USPQ2d 1093, 1098 (Fed.Cir.1990) (Rule 21); *Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1461, 15 USPQ2d 1554, 1556 (Fed.Cir.1990) (Rule 19); *Refac Int'l, Ltd. v. Hitachi, Ltd.,* 921 F.2d 1247, 16 USPQ2d 1347 (Fed.Cir.1990) (Rules 11, 37); *Registration Control Sys. v. Compusystems, Inc.,* 922 F.2d 805, 807, 17 USPQ2d 1212, 1214 (Fed.Cir.1990) (Rule 7); *Solarex Corp. v. Arco Solar, Inc.,* 870 F.2d 642, 643, 10 USPQ2d 1247, 1248 (Fed.Cir.1989) (Rule 26, 37); *Tennant Co. v. Hako Minuteman, Inc.,* 878 F.2d 1413, 1416, 11 USPQ2d 1303, 1305–06 (Fed.Cir.1989) (Rule 37); *Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538, 1550, 3 USPQ2d 1412, 1421 (Fed.Cir.1987) (Rule 60);

*Truswal Sys. v. Hydro–Air Eng'g, Inc.,* 813 F.2d 1207, 1209, 2 USPQ2d 1034, 1036 (Fed.Cir.1987) (Rule 45(b)); *Ashland Oil, Inc. v. Delta Oil Prods. Co.,* 806 F.2d 1031, 1033, 1 USPQ 1073, 1075 (Fed.Cir.1986) (Rule 60); *Chemical Eng'g Corp. v. Essef Indus., Inc.,* 795 F.2d 1565, 230 USPQ 385 (Fed.Cir.1986) (Rule 37); *DMI, Inc. v. Deere & Co.,* 802 F.2d 421, 428, 231 USPQ 276, 280–81 (Fed.Cir.1986) (Rule 16(e)); *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 228 USPQ 926 (Fed.Cir.1986) (Rules 26, 45); *Senza–Gel Corp. v. Seiffhart,* 803 F.2d 661, 231 USPQ 363 (Fed.Cir.1986) (Rule 15); *United States v. Cook,* 795 F.2d 987 (Fed.Cir.1986) (Rule 23(d)); *see also Beckman Instruments, Inc. v. LKB Produkter AB,* 892 F.2d 1547, 1550, 13 USPQ2d 1301, 1303 (Fed.Cir.1989) (harmonizing special jury verdicts); *Allen Organ Co. v. Kimball Int'l, Inc.,* 839 F.2d 1556, 1563, 5 USPQ2d 1769, 1774 (Fed.Cir.) (harmonizing special jury verdicts), *cert. denied,* 488 U.S. 850, 109 S.Ct. 132, 102 L.Ed.2d 104 (1988); *Atasi Corp. v. Seagate Technology,* 847 F.2d 826, 6 USPQ2d 1955 (Fed.Cir.1988) (standard for attorney disqualification); *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1575, 223 USPQ 465, 472

issues manifestly implicates the consistency of future trial management. Similarly, with regard to substantive legal issues not within our exclusive subject matter jurisdiction, our practice has been to defer to regional circuit law when reviewing cases arising under the patent laws.[11]

However, we have not deferred in the resolution of all procedural issues merely because that issue might separately arise in a case having nothing to do with the patent laws. Such an application of the rule in *Panduit* would be too expansive. For instance, in *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 15 USPQ2d 1469 (Fed.Cir.1990), we confronted the applicable standard for the issuance of a preliminary injunction, a procedural issue not necessarily limited to patent law. We stated then that, "when the question on appeal is one involving substantive matters unique to the Federal Circuit, as in this case, we apply to *related procedural issues* the law of this circuit," echoing the language from *Panduit* itself. *Chrysler*, 908 F.2d at 953, 15 USPQ2d at 1470 (emphasis added) (adopting language of *Panduit*, 744 F.2d at 1575 n. 14, 223 USPQ at 471 n. 14); *see also Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451 n. 12, 7 USPQ2d 1191, 1195 n. 12 (Fed.Cir.1988).

Furthermore, in *Sun–Tek Indus., Inc. v. Kennedy Sky Lites, Inc.*, 856 F.2d 173, 175, 8 USPQ2d 1154, 1155–56 (Fed.Cir. 1988), *cert. denied*, 488 U.S. 1009, 109 S.Ct. 793, 102 L.Ed.2d 784 (1989), we confronted the issue of whether an order increasing a supersedeas bond was a final appealable order. Although this procedural issue also is not confined to patent law, we declined to defer because the issue went to our own appellate jurisdiction.[12]

Where there is an essential relationship between our exclusive statutory mandate or our functions as an appellate court and the relevant procedural issue, that relationship provides an additional reason why resolution of the procedural issue may be committed to our jurisprudence. No offense would be taken were we to apply the law of our circuit, with due regard for established regional circuit law, to other issues that are essential to our statutory function such as the interpretation of the Federal Rules of Appellate Procedure or the promulgation of our Rules of Practice.

## VI

The precise issue before us, not jurisdictional but closely related to the exercise of our mandate, is the reviewability *on appeal* of fact findings made by a jury in a patent trial absent any post-verdict motions. Determination of the prerequisites to appellate review of legal issues, here sufficiency of the evidence, is committed to this Court by statute, which expressly includes all "appeal[s] from a final decision of a district court ... if the jurisdiction of that court" arose under an Act of Congress relating to patents. 28 U.S.C. §§ 1295(a)(1), 1338 (1988). The issue at hand, albeit procedural, bears an essential relationship to matters committed to our

(Fed.Cir.1984) (standard for attorney disqualification).

**11.** *See U.S. Philips Corp. v. Windmere Corp.*, 861 F.2d 695, 8 USPQ2d 1885 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1068, 109 S.Ct. 2070, 104 L.Ed.2d 635 (1989) (antitrust counterclaim); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 875, 228 USPQ 90, 99 (Fed.Cir.1985) (citing *Atari*, 747 F.2d at 1438–1440, 223 USPQ at 1086–1087). We note in passing that a rationale upon which *Atari* was based, adherence to regional circuit law to promote uniformity in pendent substantive legal issues to avoid forum-shopping by litigants between our circuit and the regional circuit by the sequence in which claims and counterclaims are filed, has been undermined by our decision in *Aerojet–General Corp. v. Machine Tool Works*, 895 F.2d 736, 741–44, 13 USPQ2d 1670, 1675–77 (Fed.Cir.1990) (in banc), which held that our exclusive jurisdiction over a case attaches at the time of the well-pleaded complaint, which includes the assertions in the counterclaim as well as in the claim.

**12.** That proposition was also forcefully stated by this Court, in banc, in *Woodard v. Sage Products, Inc.*, 818 F.2d 841, 844, 2 USPQ2d 1649, 1651 (Fed.Cir.1987):

[D]eference is inappropriate on issues of our own appellate jurisdiction. This court has the duty to determine its jurisdiction and to satisfy itself that an appeal is properly before it.

exclusive control by statute, the appellate review of patent trials.

Uniformity in the review of patent trials is enhanced, rather than hindered, by our adoption of a single position, rather than applying varying regional law to the issue before us. Indeed, an opposite rule would be confusing, as the same patent, asserted in different district court jurisdictions, might have the same dispositive factual finding reviewed or not depending upon which of differing regional circuit laws was applicable. Moreover, concern that district courts not be required to apply two sets of substantive or procedural laws during trial, depending on the appellate path ultimately taken, is not at issue. The extent to which the underlying factual findings of a judgment on a verdict are reviewed on appeal, absent a motion for JNOV, is an issue that can only arise after all the evidence is submitted and the verdict rendered. A district court would not, therefore, be required to have "served two masters" since the availability of appellate review is irrelevant to the conduct of the trial or to any decision on substantive legal issues that may arise during trial. Furthermore, our national jurisdiction provides a good position from which to establish uniform rules for the reviewability of factual issues in civil litigation under federal question jurisdiction in the absence of a post-verdict motion. Finally, predictability in the later application of the law in a circuit or other circuits is improved by the adoption of a single nationwide standard for preserving the reviewability of sufficiency of the evidence in a case arising under the patent laws. Thus, applying *Panduit*, in considering the application of the longstanding policies of promoting uniformity and minimizing confusion and recognizing the essential relationship of the issue before us to the exercise of our statutory authority, we conclude that deference to regional circuit law is not appropriate in this case.

## VII

■ In order to state the law of this circuit on the issue, we turn first to the meaning of substantial evidence in the context of appellate review of sufficiency of the evidence. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). In general, an appellate court performing this task must consider all the evidence in a light most favorable to the nonmover without determining the credibility of witnesses and without substituting its judgment for that of the jury in deciding contested factual issues. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1546, 220 USPQ 193, 197 (Fed.Cir. 1983).

In that light, a requirement for an express post-verdict motion by the potential appellant assists appellate review in several ways. First, in the preferred and best of circumstances, the district court will produce a thorough written or oral opinion on the motion for JNOV. *Senmed, Inc. v. Richard–Allan Medical Indus., Inc.*, 888 F.2d 815, 817, 12 USPQ2d 1508, 1510 (Fed. Cir.1989) ("comprehensive" and "well written opinion"); *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 247, 115 USPQ 160, 161 (9th Cir.1957) ("revealing" oral "remarks"), *cert. denied*, 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1074 (1958). The trial judge is best positioned to review impartially and in detail the evidence and events at trial, and, "our decisional approach is aided by the trial judge's review ... setting forth his [or her] reasons for denying the motion for JNOV." *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1513, 220 USPQ 929, 936 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). The appellate process materially benefits by a comprehensive summary of the course of proceedings below and an impartial review of the evidence supporting a verdict. The appellant is directed to the probative evidence contrary to his or her position and the appellate court need not sift through the entire record searching for such contrary evidence.

Second, the jury may have been persuaded by many considerations beyond just the credibility of a witness that are not

always adequately reproduced in a transcript. The district court "has the same opportunity that jurors have for seeing the witnesses [and] for noting all those matters in a trial not capable of record." *Patton v. Texas & Pacific Ry. Co.*, 179 U.S. 658, 660, 21 S.Ct. 275, 276, 45 L.Ed. 361 (1901). "The trial judge sits as the '13th juror' in evaluating the weight" to be given to all of the evidence, *Menefield v. Borg*, 881 F.2d 696, 699 (9th Cir.1989), or in determining that a particular witness's testimony is so inherently incredible that a reasonable mind could not accept it. Beyond credibility, the weight given to particular testimony by the jury can be affected by the demeanor and responsiveness of a witness during direct testimony and upon cross-examination. These concerns are equally applicable to trials of patent issues as to any other. *See Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604, 611, 222 USPQ 654, 659. For instance, testifying corporate executives may be biased by a financial interest. Expert witnesses, frequently necessary to explain terminology or the general teachings of the art, may also be similarly biased. Courts have commented on the inherent discredit that may be placed upon an inventor's testimony, especially when relating to the teachings of the prior art or to the inventor's recollection of the act of invention. *The Barbed Wire Patent Cases*, 143 U.S. 275, 284–85, 12 S.Ct. 443, 447, 36 L.Ed. 154 (1892). These considerations focus on the weight to be given to testimonial evidence and go beyond an assessment of adherence to truth. *Sonoscan, Inc. v. Sonotek, Inc.*, 936 F.2d 1261, 1264, 19 USPQ2d 1156, 1158 (Fed.Cir.1991). Thus, a juror's adverse appraisal of particular testimony need not rise to the level of general credibility. These issues, ostensibly a part of the record submitted for review in a sufficiency of the evidence determination, are not accessible to the appellate court unless attention is directed to them by the district court or the appellee. In short, the printed record on appeal more often than not will not reflect all the persuasive issues that may have determined the course of events at trial, even when that record is reviewed in its entirety by the appellate court. Thus, denial of a post-verdict motion, even in summary fashion, perforce provides the appellate court with the district court's overall assessment of the events at trial.

Third, a rule requiring presentation before the district court of a party's contention that a judgment lacks sufficient evidence promotes fair and equitable jurisprudence. The district court may take corrective action when confronted with error before an appeal is taken. "By failing to move for JNOV, the trial judge was denied the chance to correct any error by the jury." *Coffman v. Trickey*, 884 F.2d 1057, 1064 (8th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 1523, 108 L.Ed.2d 763 (1990). Surely, avoidance of unnecessary appeals is to be encouraged. Additionally, when an appeal is taken based upon a contention of insufficient evidence, the appellee is afforded more timely notice by a previous post-verdict motion. Under the Federal Rules of Appellate Procedure, an appellant urging that "a finding or conclusion is unsupported by the evidence," Rule 10(b)(2), must either order an entire transcript within 10 days after filing the notice of appeal, Rule 10(b)(1), or notify the appellee of the issue presented for appeal in the same time period. Rule 10(b)(3). If no post-verdict motion has raised issues of sufficiency of the evidence, an appellant can, by including in the record a transcript of all evidence, as happened in this case, first provide the appellee with notice of the specific factual issues in its appeal in its opening appellate brief. In such circumstances, the appellee's opportunity to respond to these specific factual issues is foreshortened as compared to the opportunity to have joined the issue earlier during the period after the verdict. When, as here, the appellant cites only testimony in support of its position, this disparity in opportunities is exacerbated. The post-verdict motion thus functions as a timely notice to benefit the appellate process, because briefing and argument are more likely to be informed and informative when the issue has already been joined in post-verdict argument.

Fourth, a rule requiring formal post-verdict presentation of contested issues is not burdensome. For instance, local rules in district courts may similarly require early and explicit formulation and substantiation of contentions that have been made in conclusory fashion in pleadings. *See Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 839 F.2d 1544, 1549, 5 USPQ2d 1779, 1782 (Fed.Cir.), *cert. denied,* 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988). Submission of statements identifying genuine issues of material fact with accompanying substantiating affidavits may be required when opposing a motion for summary judgment. *Laidman v. Tivoli Indus., Inc.*, 17 USPQ2d 1173, 1175 (C.D.Cal.1990), *aff'd,* 937 F.2d 622 (Fed.Cir.1991) (citing Central District of California Local Rule 7.14.3, "[i]n determining any motion for summary judgment, the Court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are ... (b) controverted by declaration or other written evidence filed in opposition to the motion."); *see also* General Rule 12(m), U.S. District Court, Northern District of Illinois ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."). Such local rules bar the needless prosecution of frivolous actions and permit disposition in accordance with Fed.R.Civ.P. 56 by summary judgment where there are no genuinely disputed issues of material fact. As noted by the Supreme Court, "Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (notes and citation omitted). The efficient resolution of controversies at a time of increased filings and overburdened dockets is further served by a standard for reviewability that requires a party to have set forth the specific defects in the evidentiary support for a judgment in the district court in order to obtain appellate review.

Adoption of such a rule would not deny an appellant its right to appeal. The law has long been that appellate review is not available for issues not preserved at trial. *Farley Transp. Co. v. Sante Fe Trail Transp. Co.*, 786 F.2d 1342, 1345 (9th Cir. 1985). A rule that requires explicit formulation and specification of the preserved issues after the verdict does not limit the scope of appeal but merely requires the prospective appellant to present the preserved issues to the district court in a well-known and defined format after the verdict.

The rule, furthermore, stands in harmony with Rule 50 of the Federal Rules of Civil Procedure. Rule 50(b) states that "[w]henever a motion for a directed verdict ... is denied or for any reason not granted, the [district] court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." Although a later determination of the legal question of sufficiency of the evidence by *this* Court would be predicated upon the filing of the post-verdict motion which renewed the contention, that predicate would not interfere with interpretation of Rule 50(b) by the district court in accordance with the procedural law of its regional circuit. The precise methodology of the district court's treatment of a previous directed verdict motion after the verdict is not a matter for us to decide. The district court remains free to defer action upon a motion for directed verdict until after the jury's deliberations. A district court may choose not to rule on a directed verdict motion made at the close of the evidence, and may, instead, under Rule 50(b), make a later determination of the legal question raised by the motion without first receiving a motion for JNOV. In such circumstances, the ruling by the district court on the deferred motion, whether by grant or denial, will have the legal consequence on appellate review of a similar ruling by the district court on a motion for JNOV, because the court's deferred consideration effectively converts the motion into a post-verdict motion.

Thus, a requirement for a post-verdict motion does not affect the manner in which a district court chooses to determine legal questions raised on motions.

In sum, we conclude that we cannot review the sufficiency of the evidence after a jury verdict absent some post-verdict disposition, either by a deferred ruling or upon a post-verdict motion. Biodex's failure to present the district court with a post-verdict motion precludes appellate review of sufficiency of the evidence. Our resolution of the standard for establishing reviewability of the sufficiency of evidence in a patent case by requiring a post-verdict motion is, therefore, dispositive of that portion of the appeal directed to whether there was substantial evidence to support the special verdicts.

### VIII

■ In order to prevail on the jury instruction issue in this case, Biodex must demonstrate both that the jury instructions actually given were fatally flawed and that the requested instruction was proper and could have corrected the flaw. We conclude that Biodex has failed in both tasks. We have reviewed the instructions given by the judge and find no reversible error in the instructions governing the issues at trial in this case. We note that both parties consented to a trial in which the jury responses would require resolution of mixed questions of fact and law. In response to Biodex's contention that the jury instructions were incomplete because they lacked a "plain language" instruction for determining the permissible scope of the "means-plus-function" term en route to making a finding on literal infringement, we note that the district court did instruct the jury, that "[t]o determine whether a machine 'literally' has each element of a claim, you must first look to the language" and "[i]n deciding the meaning of the words [*e.g.*, terms] used in a claim, you should refer to the text and drawing in the patent, as well as the 'prosecution history.'" Thus, in the circumstances of this case, we do not find reversible error in the instructions on resolving the contested factual question underlying the verdict of infringement. Furthermore, Biodex's suggestion that lay jurors would be able to determine the scope of the terms in the 910 patent from their "plain" meaning ignores the language of the disputed terms and the fact that claims are drafted to be read by those skilled in the art, rather than lay persons. Thus, the claim terms in question, such as "servo motor" or "closed loop velocity servo feedback," can only be understood by the lay juror with assistance from the ancillary aids to interpretation such as the expert testimony of the inventor or of those skilled in the art, and review of the specification, the prosecution history, and the relevant prior art. *Moeller v. Ionetics, Inc.*, 794 F.2d 653, 656–57, 229 USPQ 992, 994–95 (Fed.Cir.1986). Absent demonstration of reversible error in the jury instructions, Biodex has failed in its task of demonstrating that the instructions read in their entirety were incorrect or incomplete as given.

Assuming, *arguendo*, that one could quibble with the instructions as given, Biodex also fails in its other task of demonstrating that its rejected instruction could have corrected the flaw. In the context of the defense in this case, the proposed jury instruction would have been misleading. There is a clear line of distinction between using the contents of the prosecution history to reach an understanding about disputed claim language, *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452, 227 USPQ 293, 296 (Fed.Cir.1985), and the doctrine of prosecution history estoppel which "estops" or limits later expansion of the protection accorded by the claim to the patent owner under the doctrine of equivalents when the claims have been purposefully amended or distinguished over relevant prior art to give up scope. *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1362, 219 USPQ 473, 481 (Fed.Cir. 1983). As stated by Biodex, "[t]he two uses of the prosecution history must not be confused." Therefore, Biodex is technically correct in asserting that the doctrine of prosecution history estoppel is "irrelevant" to determination of literal claim scope. *Fromson v. Advance Offset Plate, Inc.,*

720 F.2d 1565, 1571, 219 USPQ 1137, 1141 (Fed.Cir.1983). However, a particular interpretation of a claim term may have been disclaimed by the inventor during prosecution, as was asserted by Loredan in this case. *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580, 6 USPQ2d 1557, 1561 (Fed.Cir.1988). A disclaimer could be directed to interpretation. Furthermore, understanding claims with functional limitations may require reference to the prosecution history. *See Senmed, Inc. v. Richard–Allan Medical Indus.*, 888 F.2d 815, 819, 12 USPQ2d 1508, 1511–12 (Fed. Cir.1989). Therefore, the district court may have properly believed that the jury would have been confused by an instruction that might have been interpreted to bar referral to the prosecution history for an inquiry into structural equivalents.

Finally, this Court has specifically cautioned against reading means-plus-function limitations to cover all possible means that perform the recited function. *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1580, 12 USPQ2d 1382, 1386–87 (Fed.Cir.1989); *see also Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 19 USPQ2d 1367 (Fed.Cir.1991). A "literal" construction of such a limitation may encompass only the disclosed structure and its equivalents. Thus, the "plain meaning" of such a claim, without resort to limiting features contained in the specification, the prosecution history, and a factual inquiry into equivalents, might create an erroneously broad scope. *Medtronic Inc. v. Intermedics, Inc.*, 799 F.2d 734, 741–42, 230 USPQ 641, 645 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1033, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987) (§ 112 ¶ 6 claims make it "necessary to instruct the jury on equivalency"). In sum, Biodex has not demonstrated prejudicial legal error in the jury instructions.

## IX

■ Since we conclude that we may not review for sufficiency of the evidence, and since there was no prejudicial legal error, we must affirm the judgment as a whole. In so doing, we also reject Loredan's argument that the appeal is frivolous. In the penultimate paragraph of its brief, Loredan contends, in conclusory fashion, that the "appeal is sufficiently frivolous to support an award of sanctions" without citation to the opening brief or argument on the factual basis for the allegation of frivolity. Fed. R.App.P. 38 provides that, "[i]f a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." While a court of appeals is not precluded, by the plain language, from making such a determination *sua sponte*, *see Romala Corp. v. United States*, 927 F.2d 1219, 1222 (Fed.Cir.1991), we conclude that an assertion of frivolousness by an appellee requires more than the mere incantation of Rule 38.

After this Court first made clear its intention to impose sanctions for frivolous appeals, *Asberry v. United States Postal Serv.*, 692 F.2d 1378, 1382, 215 USPQ 921, 921 (Fed.Cir.1982), the fashion has become for appellee briefs to contain perfunctory allegations that the appellant has foisted a baseless appeal upon us, thereby printing a ticket to what appellees may perceive as a frivolity lottery in hopes of recouping the expenses of an appeal. The Practice Note published in our Rules of Practice, following Rule 38, states that "[a]ppellees and respondents are expected to challenge frivolous appeals and petitions for review in their principal brief." However, an assertion that an appeal is frivolous is a serious allegation. We conclude that, henceforth, an assertion by an appellee that an appeal is frivolous should be accompanied by citation to the opposing brief and the record below, and clear argument as to why those citations establish the allegedly frivolous nature of the appeal. *See Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1578–80, 17 USPQ2d 1914, 1917–20 (Fed.Cir.1991).

■ As we have repeatedly noted, "[a]n appeal having a small chance for success is not for that reason alone frivolous" and thus deserving of sanctions. *Id.* at 1578, 17 USPQ2d at 1918 (citing *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1554, 220 USPQ 193, 203 (Fed.Cir.1983)). Even though an appeal is judged "entirely

without merit," *see Romala*, 927 F.2d at 1222, it may have presented an arguable basis for reversal, and thus not qualify for sanctions. By its bare assertion, Loredan necessarily failed to demonstrate that the appeal of Biodex was nude of arguable issues.

AFFIRMED.